UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DUNEDIN DEVELOPMENT CO., LLC,
and SAILWINDS CONDOMINIUM
ASSOCIATION, INC.,

        Plaintiffs,
v.                              Case No. 8:09-cv-303-T-33TBM

CITY OF DUNEDIN, FLORIDA, and
RICHARD JOHNSON,

        Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Richard Johnson's Dispositive Motion to Dismiss Count Two of the Second Amended Complaint, or in the Alternative, Motion for Summary Judgment (the "Motion" Doc. # 14), which was filed on April 14, 2009. On May 8, 2009, Plaintiffs filed a Response in Opposition to the Motion (Doc. # 19).

Both sides filed affidavits and other evidence in these proceedings. Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, "if, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" with "all parties given a

reasonable opportunity to present all the material that is pertinent to the motion."

The matter of whether to consider extra-pleading submissions and convert the motion is committed to this Court's sound discretion. <u>Jones v. Auto Ins. Co. of Hartford</u>, 917 F.2d 1528, 1531-1532 (11th Cir. 1990). This Court exercises that discretion here by considering matters outside of the four corners of the Second Amended Complaint, and therefore, the Court's analysis is governed by Rule 56 of the Federal Rules of Civil Procedure. Furthermore, as to the issue of Johnson's qualified immunity, the Court determines that the parties, each having filed evidence on the issue, have had ample opportunity to submit extra-pleading submissions.

For the reasons stated below, the Motion is due to be granted to the extent that the Court determines that Johnson is entitled to qualified immunity.

I. **Factual Background**

Plaintiff Dunedin Development is the owner of a 42 unit condo/motel located at 1414 Bayshore Boulevard in Dunedin, Florida (the "Property"). (Doc. # 11 at ¶ 4). The Property was formerly known as the Sailwinds, but is now known as

Beso Del Sol Resort. Plaintiff Sailwinds Condominium Association, Inc. is the condominium association at the Property. (Doc. # 11 at ¶ 5). Timothy J. Adams is the Manager of Plaintiff Dunedin Development and is the President of Plaintiff Sailwinds Condominium Association, Inc. (Adams Aff. Doc. # 16 at ¶ 2).

Defendant Johnson is the City of Dunedin's Building Code Administrator. (Doc. # 11 at ¶ 3). As the Building Code Administrator, Johnson's duties include, but are not limited to "administering, supervising, directing, enforcing, or performing the permitting and inspection of construction, alteration, repair, remodeling, or demolition of structures and the installation of building systems within the City of Dunedin." (Johnson Aff. Doc. # 15 at ¶ 3).

Johnson is also responsible for "ensuring compliance with the Florida Building Code and any local amendment to the Florida Building Code" when permits are concerned. (Johnson Aff. Doc. # 15 at ¶ 3). Johnson has been the Building Code Administrator since July 2005. (Johnson Aff. Doc. # 15 at ¶ 1).

Johnson is also the City of Dunedin's Floodplain Administrator. (Johnson Aff. Doc. # 15 at ¶ 4). As the Floodplain Administrator, Johnson is "charged with ensuring that the City [of Dunedin] is eligible for the sale of federally-subsidized flood insurance to its citizens under the National Flood Insurance Program by enforcing the City's Floodplain Management Ordinance." (Johnson Aff. Doc. # 15 at ¶ 5).

The Property is located in a coastal high hazard area (a "V" zone) under the City of Dunedin's Floodplain Management Ordinance. (Johnson Aff. Doc. # 15 at ¶ 6). That means that the Property is subject to high velocity waters, including hurricane wave wash and tsunamis. (Johnson Aff. Doc. # 15 at ¶ 6). The lowest habitable floor in a V zone property cannot be below the base flood elevation. (Johnson Aff. Doc. # 15 at ¶ 6).

The Property was issued a Certificate of Occupancy in 1983. (Doc. # 11 at ¶ 14; Adams Aff. Doc. # 16 at ¶ 11). Since that time, "for over twenty-five (25) years, City officials issued permits for the building, conducted fire inspections at the office annually, [and] issued occupational licences annually." (Doc. # 11 at ¶ 18). Since

4

the original Certificate of Occupancy was issued in 1983, the Property has had several different owners, and has been through at least one bankruptcy case. (Doc. # 11 at ¶¶ 8-21). Dunedin Development purchased the Property in conjunction with a court-approved sale from a bankruptcy trustee in February 2008. (Doc. # 11 at ¶ 21; Adams Aff. Doc. # 16 at ¶¶ 4, 8).

According to Adams, the acquisition of the Property involved an investment of over four million dollars. (Adams Aff. Doc. # 16 at ¶ 9). Elizabeth Lord worked as a property manager in the ground floor office of the Property from 1986 until 2005. (Lord Aff. Doc. # 17 at ¶ 2). Thus, the ground floor office of the Property has been consistently maintained as an office since at least 1986.

During the summer of 2008, the City, through Johnson, informed Dunedin Development that there were "issues" regarding use of the Property's ground floor. (Doc. # 11 at 23; Adams Aff. Doc. # 16 at ¶ 13). Specifically, the City determined that use of the office on the ground floor of the Property was not approved in 1983, or, in the alternative, if it had been approved, that it was no longer allowed. (Doc. # 11 at ¶ 24). Thereafter, City officials, the City

attorney, and Plaintiffs participated in discussions regarding the use of the ground floor of the Property. (Doc. # 11 at ¶¶ 25-32; Adams Aff. Doc. # 16 at ¶ 15).

However, on December 19, 2008, Johnson, acting as Building Code Administrator and Floodplain Administrator for the City, informed Plaintiffs, via e-mail, that he had requested that electrical services to the Property be disconnected "due to unresolved building and flood zone violations." (Doc. # 11 at ¶ 33; Adams Aff. Doc. # 16 at ¶ 18). In the e-mail, Johnson stated that he would notify the City of Dunedin's Code Enforcement Board of the code violations and that notices would be issued by mail. (Doc. # 11 at ¶ 34; Adams Aff. Doc. # 16 at ¶ 18).

However, Johnson never notified the Board and failed to issue the notices. (Doc. # 11 at ¶ 35; Adams Aff. Doc. # 16 at ¶ 18). Thereafter, in an e-mail, on December 24, 2008, Johnson revoked the Certificate of Occupancy for the Property, effective as of December 30, 2008. (Doc. # 11 at ¶ 37; Adams Aff. Doc. # 16 at ¶ 19). Johnson directed Progress Energy to disconnect all electrical services to the Property as of December 30, 2008. (Doc. # 11 at ¶ 38).

Plaintiffs sought relief in state court by filing a

motion for a temporary injunction to preserve the status quo. (Adams Aff. Doc. # 16 at ¶ 21). The state court set a hearing for January 9, 2009. (Adams Aff. Doc. # 16 at ¶ 21). On the eve of the hearing, without giving Plaintiffs the opportunity for a hearing, Johnson declared all of Plaintiffs' guest units on the Property uninhabitable and ordered all occupants of the Property to vacate by 6 p.m. as of January 8, 2009. City officials arrived on the Property on January 8, 2009, and posted notices on the doors of the individual units and ordered all occupants to vacate the premises. (Adams Aff. Doc. # 16 at ¶ 22).

Plaintiffs contend that Johnson did not provide them with "the appropriate notice and process of presenting [a] case to the Dunedin Code Enforcement Board." (Adams Aff. Doc. # 16 at ¶ 23). Accordingly, Plaintiffs filed an amended complaint against the City of Dunedin and Johnson in state court on January 30, 2009.[1] (Doc. # 1)

Defendants removed the amended complaint to this Court on February 20, 2009, on the basis of federal question

---

[1] Plaintiffs initially initiated suit against Johnson and the City on January 7, 2009, in conjunction with their request for a temporary injunction to maintain the status quo.

jurisdiction. (Doc. # 2).  Once in Federal Court, Plaintiffs again amended the complaint with leave of Court. (Doc. # 11).  Count One of the Second Amended Complaint is asserted against the City and seeks a declaratory judgment, pursuant to Florida Statute Section 86.011, that the City is barred from enforcing building codes and regulations that would interfere with certain uses of the Property.  (Doc. # 11 at 59).[2]

Count Two of the Second amended Complaint is asserted against Johnson, individually, as well as against the City, pursuant to 42 U.S.C. § 1983.[3] Plaintiffs generally allege that Johnson violated federal law when he revoked Plaintiffs' Certificate of Occupancy for the Property. Plaintiffs allege that Johnson, acting under color of state law, violated Plaintiffs' clearly established rights,

---

[2] Plaintiffs state in the Second Amended Complaint that "the Court has jurisdiction over the pending state claim in Count One pursuant to 28 U.S.C. § 1367." (Doc. # 11 at ¶ 6).

[3] Plaintiffs state in the Second Amended Compliant that Count Two is asserted pursuant to 42 U.S.C. § 1983 against the City and Johnson." (Doc. # 11 at ¶ 61).  The Court notes that, while the Motion seeks dismissal of Count Two in its entirety, the Motion only discusses Johnson.  At this time, there is no motion or response addressing the propriety of Plaintiffs' Section 1983 claim against the City.

8

property, privileges, and immunities, when he:

> [R]evoked the Certificate of Occupancy for the facility and later red-tagged the property, evicted guests staying in Dunedin Development units on January 8, 2009, and pursued actions to prevent the use of the ground floor office, recreation area and related alleged violations without following the procedures required under the Dunedin City Code Enforcement Board procedures and Florida Statutes.

(Doc. # 11 at ¶ 63).

Plaintiffs contend that they were denied an opportunity to be heard before the revocation of the Certificate of Occupancy, and that Johnson failed to notify the Code Enforcement Board, when he revoked the Certificate of Occupancy. (Doc. # 11 at ¶ 64).

Johnson contends that he is immune from discovery and suit, and he filed the Motion seeking dismissal of the allegations against him asserted in Count Two. The Motion is now ripe for the Court's review.

## II. **Legal Standard**

### A. **Summary Judgment**

The Court should render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the

court should not grant summary judgment." Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

**B.   Qualified Immunity**

In this case, Johnson seeks an order granting him qualified immunity and dismissing Count Two of the Second Amended Complaint. A government official is immune from suit in his or her individual capacity unless their conduct violates clearly established constitutional or federal rights of which a reasonable person would have known. Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003). Qualified immunity represents a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without fear of constant, baseless litigation. GJR Invs. v. City of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998).

Qualified immunity is not absolute immunity. By its definition, qualified immunity contemplates instances where government officials are not protected. Kingsland v. City of Miami, 382 F.3d 1220, 1233 (11th Cir. 2004). "Qualified immunity 'gives ample room for mistaken judgments' but does

not protect 'the plainly incompetent or those who knowingly violate the law.'" Id. at 1231 (citing Malley v. Briggs, 475 U.S. 335, 343 (1986)).

To be entitled to qualified immunity, the government official must first establish that he was acting within his discretionary authority. Dalrymple, 334 F.3d at 995. If the alleged conduct arises from the discharge of a defendant's discretionary functions, then the burden shifts to the plaintiff to prove: (1) that the facts alleged show that the government official's conduct violates a constitutional or federal right; and (2) that the constitutional or federal right "was clearly established at the time of the violation." Id.

As will be discussed below, the Court determines that Johnson is entitled to qualified immunity.

### III. **Analysis**

In this case, Plaintiffs do not dispute that Johnson was acting within his discretionary authority as the Building Code Administrator and Floodplane Administrator when he carried out the actions described in the Second Amended Complaint. Therefore the Court is left to determine whether Plaintiffs proved that Johnson's conduct violated a

12

constitutional or federal right and that the constitutional or federal right was clearly established at the time of the violation.

Here, Plaintiffs contend that "[b]y purposely employing an enforcement strategy that foreclosed from the Plaintiffs notice or opportunity to raise defenses or otherwise be heard, Johnson violated Plaintiffs' clearly established due process rights." (Doc. # 19 at 10).

Thus, Plaintiffs sue Johnson, individually, in Count Two pursuant to § 1983, under the theory that Johnson violated Plaintiffs' procedural due process rights.[4]

**Procedural Due Process**

In order to divest Johnson of qualified immunity, Plaintiffs must prove that Johnson violated a clearly established constitutional right. Plaintiffs argue that Johnson violated Plaintiffs' procedural due process rights when he revoked the Certificate of Occupancy without a

---

[4] Section 1983 does not, independently, confer any substantive rights. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 617-18 (1979)("one cannot go into court and claim a violation of § 1983 -- for § 1983 does not protect anyone against anything"). Section 1983 merely provides a remedy for the violation of rights created elsewhere. Id. at 618.

hearing.  However, Plaintiffs cannot point to any authority that clearly shows that Johnson violated Plaintiffs' due process rights.  In fact, Plaintiffs failed to pinpoint the constitutional provision at hand.  Because Plaintiffs contend that Johnson interfered with Plaintiffs' property rights without due process, it appears that Plaintiffs allege that Johnson violated the Fifth and/or Fourteenth Amendments to the United States Constitution.

A right can be considered "clearly established" if, in light of preexisting law, the unlawfulness of the official's conduct is "apparent." Cooper v. Dilon, 403 F.3d 1208, 1220 (11th Cir. 2005).  Thus, an official is entitled to qualified immunity unless the official has fair warning that his conduct is unlawful. Id.  The Eleventh Circuit has identified three categories of fair warning:

> First, . . . whether the federal statute or constitutional provision is so clear, and the conduct is so bad, that it precludes qualified immunity even in the total absence of case law. Second, if the conduct is not bad enough that it violates a constitutional provision on its face, [a court] look[s] to case law that can be applied broadly to a number of factual situations.  Third, and finally, if no broad case law is applicable, [the court] turns to case law precedent that is tied to the facts.

Kesinger v. Herrington, 381 F.3d 1243, 1250 n.6 (11th Cir.

14

2004).

The Florida Building Code governs Johnson's actions, and Section 110.5 entitled "Revocation," applicable to Certificates of Occupancy, demonstrates that Johnson's conduct was lawful. Section 110.5 states:

> The building official is authorized to, in writing, suspend or revoke a certificate of occupancy or completion issued under the provisions of this code wherever the certificate is issue in error, or on the basis of incorrect information supplied, or where it is determined that the building or structure or portion thereof is in violation of any ordinance or regulation or any of the provisions of this code.

Florida Building Code Section 110.5 (2007).

Before revoking Plaintiffs' Certificate of Occupancy, Johnson and Plaintiffs had been in communication about various code violations on the Property. Johnson's affidavit describes "building code violations, fire code violations, stormwater issues, and zoning issues" on the Property, including but not limited to renovation of the penthouse and construction of a fountain on the Property without a permit, renting units on the Property without a Certificate of Completion for renovated guest units, and uninspected and un-permitted electrical work on the ground floor. (Johnson Aff. Doc. # 15 at ¶¶ 15-18).

15

Johnson states in his affidavit that he believed that his action of revoking the Certificate of Occupancy and red-tagging the Property were lawful under Florida law. (Johnson Aff. Doc. # 15 at ¶ 19). Once the Certificate of Occupancy was revoked, Florida law required that the Property be vacated. <u>See</u> Florida Building Code Section 110.1 ("No building or structure shall be used or occupied . . . until the building official has issued a certificate of occupancy therefor as provided herein"). In addition, Florida Building Code Section 111.3 authorized Johnson to terminate electricity to the Property.

Under the plain wording of the Code, the building official has the authority to revoke a Certificate of Occupancy if the building is in violation of any ordinance, regulation, or provision of the Florida Building Code, and there are no notice and hearing provisions.

It also appears that Johnson was permitted to revoke the Certificate of Occupancy under his obligations as the City's Floodplane Administrator. In 1968, Congress enacted the National Flood Insurance Act of 1968 (the "Act") to provide flood insurance to property owners in flood-prone areas. 42 U.S.C. § 4001. Subchapter 1 of the Act

establishes the National Flood Insurance Program, which permits communities such as the City of Dunedin, to qualify its residence for the sale of federally subsidized flood insurance, so long as certain criteria are met. 42 U.S.C. §§ 4001-4028.

One of the conditions to the availability of such insurance is the creation and enforcement of local floodplane management regulations. 44 C.F.R. § 59.22(a)(3)(2008). The City of Dunedin has thus enacted Floodplane Management Ordinances. Dunedin Code of Ordinances ("DCO") § 122-81.

Johnson's affidavit demonstrates that, in attempting to prohibit the use of the ground floor of the Property, he was acting within his discretionary duty as floodplane administrator. Johnson explains, "It was my conclusion that the building codes and flood regulations in place at that time would have prohibited the occupancy of the ground floor because the ground floor was built below base flood elevation, and the property was in a "V" (velocity) flood zone, meaning that occupancy was prohibited below the base flood elevation." (Johnson Aff. Doc. # 15 at ¶ 9, 12).

Plaintiffs generally discuss several procedural due

17

process cases. See <u>First Assembly of God Naples, Fla., Inc. v. Collier County, Fla.</u>, 20 F.3d 419, 422 (11th Cir. 1994)("Due process requires that persons deprived of a right must be afforded notice and an opportunity to be heard"); <u>Massey v. Charlotte County, Fla.</u>, 842 So. 2d 142, 146 (Fla. 2nd DCA 2003)("Procedural due process requires both fair notice and a real opportunity to be heard at a meaningful time and in a meaningful manner.")[5]

Plaintiffs have not pointed to any authority that leads this Court to believe that Johnson's conduct violated a clearly established constitutional or other federal right. Plaintiffs' general due process arguments, and discussion of Florida law do not substantiate their case against Johnson, individually.

As stated by the Eleventh Circuit, "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated,

---

[5] Plaintiffs also discuss <u>Hollywood Beach Hotel Co. v. City of Hollywood</u>, 329 So. 2d 10, 15 (Fla. 1976), however, that case did not address any federal rights. The analysis of that case focused on the doctrine of equitable estoppel, and is not applicable to the present case.

18

reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Ala. A & M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994). Further, the Eleventh Circuit has warned that "courts must not permit plaintiffs to discharge their burden by referring to general rules and to the violation of 'abstract rights.'" Id.

Plaintiffs in this case have not carried their burden of showing that Johnson violated a clearly established federal right. Accordingly, the Court determines that Johnson is entitled to qualified immunity. The Court dismisses the complaint to the extent that it is asserted against Johnson in his individual capacity. The Court does not dismiss Count Two in its entirety, as requested in the Motion, because Count Two is also asserted against the City, and there are no pending motions directed to the claims against the City.[6]

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

Defendant Richard Johnson's Dispositive Motion to

---

[6] The Court notes that if Count Two were dismissed in its entirety, the Court would be inclined to remand the case to state court due to the absence of a federal question or diversity of citizenship jurisdiction.

Dismiss Count Two of the Second Amended Complaint, or in the Alternative, Motion for Summary Judgment (Doc. # 14) is **GRANTED** to the extent that the Court determines that Johnson is entitled to qualified immunity. The Court dismisses the Second Amended Complaint only to the extent that it is asserted against Johnson in his individual capacity.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 10th day of November, 2009.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record